BERNARD SHANE, Appellant, *v.* THE CITY OF NEW YORK, Respondent.

(Supreme Court, Appellate Term, May, 1909.)

Municipal corporations — Officers and agents — Officers and employees other than mayor and common council — Compensation — Compensation of employees not officers — Compensation while absent or suspended.

A transitman and computer in the office of the president of the borough of Manhattan is within that class of public servants whose salary is incident to the position held by them; and where, while the appropriation applicable to the work on which he was engaged was sufficient, he was laid off and no one was appointed in his place nor his position abolished, he is entitled to his salary though subsequently he obtained other work.

In an action by him for salary, the facts of his appointment, position and suspension being admitted, it was unnecessary for him to produce a certificate of pay-roll by the borough president or by the civil service commission, the purpose of which is to prevent a disbursing officer from paying except upon a certificate showing work performed.

The plaintiff, whose record was free from charges of any kind, having been "laid off" and not "removed," is entitled to recover his salary without obtaining his "reinstatement" by certiorari or mandamus.

APPEAL by the plaintiff from a judgment in favor of the defendant, rendered in the Municipal Court of the city of New York, seventh district, borough of Manhattan, dismissing the complaint.

Francis K. Pendleton (Theodore Connoly, John F. O'Brien and Frank E. Smith, of counsel), for respondent.

Louis E. Felix, for appellant.

DAYTON, J.   Plaintiff was, on July 24, 1905, duly appointed in the classified civil service a transitman and computer in the office of the president of the borough of Richmond at a salary of $1,350, subsequently increased to $1,500 per annum.

Misc.]        Supreme Court, Appellate Term, May, 1909.

On February 14, 1908, he received from the president of
that borough a communication stating that he, plaintiff, was
laid off from March 1, 1908, for lack of appropriation.   On
February 29, 1908, he received a rescission of said action
and, on the same day, he received another communication
from said president, as follows: " I beg to inform you of
your lay-off for ' Lack of work' as transitman, Bureau of
Engineering Topography of this office, to take effect March
1, 1908."   On February 29, 1908, said president addressed
two communications to the municipal civil service com-
mission — one rescinding plaintiff's lay-off (February 14,
1908) for lack of appropriation and the other stating that
plaintiff was laid off for " lack of work," to take effect
March 1, 1908.

Plaintiff continued to tender his services to said president,
which were refused.   He subsequently obtained other em-
ployment and brought this action, on the ground of his
wrongful discharge, to recover his salary from March 1 to
June 18, 1908, $437.50.   No charges were preferred against
the plaintiff, nor is it suggested that he was in any way in-
competent for the performance of his duties.   The defense
was that plaintiff's employment was rendered unnecessary
and abolished; that he was lawfully suspended without pay;
that he brought no proceeding for his reinstatement; that,
pursuant to section 1543 of the Greater New York charter,
the municipal civil service commission was duly notified
of such suspension, whereby plaintiff was certified for ap-
pointment and acquiesced in said action by receiving an
appointment as draughtsman in the bureau of sewers,
borough of Manhattan.

The learned trial justice, in a memorandum decision, held
as follows: " If the plaintiff were removed he could only be
removed after notice.   There is no pretense that he was so
removed.   *   *   *   While I think the plaintiff has a claim
against the city based upon his appointment and offer to do
the work required of him, still I think he cannot recover at
this time in this action."   Thereupon the complaint was
dismissed, on the ground that the borough president had not
been required to certify plaintiff's name on the pay-roll nor
20

Supreme Court, Appellate Term, May, 1909.     [Vol. 63.

the civil service commission required to attach their certificate to such pay-roll. No question was raised as to the regularity of plaintiff's appointment. The finally adopted reason or ground for his discharge was "Lack of work," it being patent that "Lack of appropriation" would not stand scrutiny. Investigation of the record demonstrates that "Lack of work" is equally untenable. Mr. Tuttle, principal assistant engineer of the borough president, testified as follows: "Q. Was there a lack of work in that department in the latter part of February, 1908? A. I think there was. Q. You are not sure about it? A. I am not positive about it." Mr. Tribus, the consulting engineer in charge of the bureau of engineering, who ordered plaintiff's suspension, testified as follows: "Q. You found there was a mistake in the laying off for lack of appropriation? A. Yes, sir. Q. And that you corrected to laying off for lack of work? A. Yes, sir." He proceeded to say: "The whole financial situation of the city during December, January and February was uncertain. We were starting on a very important piece of work. We received for that work appropriations in the shape of corporate stock or bond issues, not limited to any specific twelve months. We didn't know, when the second instalment of that corporate stock was authorized, whether we would ever get any more; * * * and, therefore, we deemed it advisable, as a matter of policy, to cut down the work, the amount of work done; and, therefore, we deemed it proper to lay off some men, and Mr. Shane was one of the men to be laid off for *contemplated* lack of work after the first of March. Q. Was there sufficient work to be done in that bureau or department for these transitmen and computers, if you had permitted it to be done? A. As I understood the needs at that time, there was not sufficient of the kind Mr. Shane was doing. Q. From your own personal knowledge? A. I had no personal knowledge as to that principal feature. Q. I understood you to say that you were afraid that there would not be enough money to pay for the work to be carried on, unless there was a temporary reduction in the force, and that business policy dictated you that a reduction in the force would be the best means out

of the situation? A. Yes, that is correct." He further testified, however, that, on February 4, 1908, an appropriation of $90,000 for the bureau had been approved and that the pay-roll was $11,000 per month. Mr. Cromwell, the borough president, testified that, in the earlier part of the year, the bureau had an appropriation of $75,000, followed by that of February of $90,000, making a total of $165,000. " Q. Why did you want that appropriation of $90,000 at that time? A. To enable us to do as much work as possible. Q. There is quite a lot of public development going on in the borough of Richmond? A. Yes, sir. Q. Necessitating this particular class of work? A. Yes, sir; topographical work is the foundation of the department. Q. As matter of fact there was enough work to put this man on, only it would have eaten up the appropriation? A. It would have been bad policy. Q. So that, when you suspended him for lack of work, you only meant to suspend him for lack of appropriation for work that might be done in the future? A. No, we felt there was not sufficient work to warrant a further expenditure. Q. He could have been put to work at that time? A. He could have. Q. Subsequent to March 1, 1908, you increased the force of the topographical bureau? A. I don't recollect. Q. As near as you can remember were there additional men put to work there, doing the same class of work this plaintiff was doing, the same kind of work? A. I don't know; there may have been appointments made filling vacancies that occurred later on; there are constant changes in the office." It is manifest that when plaintiff was suspended there was neither lack of appropriation nor lack of work. The president of a borough applies for and obtains appropriations for specific expenditures. His duty is to disburse them carefully and honestly upon the work for which they are granted. Section 383, Revised Greater New York charter, as amended, provides that the president of a borough of the city " shall have power to appoint a secretary, and such assistants, clerks and subordinates as he may deem necessary, *if provision be made therefor* by the board of estimate and apportionment and the board of aldermen. The said secretary, assistants, clerks and subordi-

nates, shall hold *office* at the pleasure of the president, *subject* to the provision of the civil service law." It would seem that a borough president may not discharge, lay off or suspend capable classified civil service employees, while there is work for them to do within his appropriation, because of his (perhaps baseless) apprehension that, in a succeeding period, the city may be financially unable to make further appropriations for continuing the work which is " the foundation of the department." The plaintiff was within that class of public servants whose salary was an incident to the position held by him. No one was appointed in his place, nor was his position abolished. There being sufficient appropriation applicable to the work on which he was engaged, plaintiff was unlawfully " laid off " — suspended — and is entitled to the salary claimed, notwithstanding he subsequently obtained other work. No certificate of pay-roll by the borough president or by the civil service commission· was necessary, for the reason that plaintiff's appointment, position and suspension are admitted; and, as such statutory certificate is for the purpose of preventing a disbursing officer from paying except upon a certificate showing work performed, an application for it by plaintiff, he having been deprived of doing work, would have been a manifestly idle ceremony. The cases on this point cited by the learned trial judge present wholly different facts. No authority is cited by the city for its contention that plaintiff, on the facts here shown, may not recover without first obtaining his " reinstatement " by certiorari or mandamus. He was " laid off," not removed. His record is free from charges of any kind. The title to his position is unchallenged; therefore, no proceeding was required.

The judgment should be reversed and judgment rendered for the plaintiff for the amount, with interest, as demanded, with costs in this court and in the court below.

GILDERSLEEVE and GOFF, JJ., concur.

Judgment reversed and judgment rendered for plaintiff, as demanded, with costs in this court and in court below.